Matthew L. Bycer, AZ Bar No. 025391
Bycer Law, PLC
7220 N. 16th St., Suite H
Phoenix, AZ 85020
(602) 944-2277
matt@BycerLaw.com

*Attorney for Plaintiff Columbia River Mining Supplies, LLC*

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Columbia River Mining Supplies, LLC,** | Case No. _____ |
| *Plaintiff* | |
| v. | **COMPLAINT FOR PATENT INFRINGEMENT** |
| **Colter Young Consulting & Design; Colter Young Consulting LLC; Colter Young; and Jane Doe Young,** | |
| *Defendants.* | **DEMAND FOR JURY TRIAL** |

Plaintiff Columbia River Mining Supplies, LLC ("CR Mining") for its complaint against Defendants Colter Young Consulting & Design, Colter Young Consulting LLC, Colter Young, and Jane Doe Young alleges as follows:

## THE PARTIES

1. CR Mining is a corporation organized and existing under the laws of the State of Washington.

2. CR Mining is in the business of manufacturing and selling hobbyist gold and iron prospecting equipment. For example, CR Mining manufactures and sells the Spin It Off™

black sand magnetic separator and the Drop Riffle™ power sluice.

3. On information and belief, Colter Young Consulting & Design ("Young C&D") is an unincorporated entity with an address at 3525 W. Cassia Street, Boise, Idaho.

4. On information and belief, Colter Young Consulting LLC ("Young LLC") is a limited liability company organized and existing under the laws of Idaho with a principal address at 3525 W. Cassia Street, Boise, Idaho.

5. On information and belief, Colter Young is a resident of Idaho.

6. On information and belief, Jane Doe Young is a resident of Idaho.

7. On information and belief, Colter Young and Jane Doe Young are an Idaho marital community.

8. The Youngs, if married, were acting at all relevant times alleged herein on behalf of their respective martial communities.

9. On information and belief, Young C&D and Young LLC are subject to common ownership and governance, in particular by Colter Young.

## JURISDICTION AND VENUE

10. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq., including 35 U.S.C. § 271, relating specifically to U.S. Patent No. 9,358,550 (the "'550 Patent" or the "Asserted Patent"). This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over Young C&D, Young LLC, and Colter Young, as Young C&D, Young LLC, and Colter Young, have conducted, and does regularly conduct, business within Arizona. Young C&D, Young LLC, and Colter Young has made, used, offered to sell, sold, and/or imported into the United States, including to customers located within Arizona, the Accused Products. Young C&D, Young LLC, and Colter Young have sought the protection and benefit from the laws of Arizona by placing infringing products into the stream of commerce through an established distribution channel with the awareness and/or intent that they will be purchased by consumers in Arizona.

12. This Court has personal jurisdiction over Young C&D, Young LLC, and Colter Young, as Young C&D, Young LLC, and Colter Young, because, on information and belief, they have attended trade shows as exhibitors in Arizona, where Young C&D, Young LLC, and Colter Young have made, used, offered to sell, and/or sold products to customers located within Arizona.

13. This Court has personal jurisdiction over Young C&D, Young LLC, and Colter Young, as Young C&D, Young LLC, and Colter Young, because, on information and belief, Young C&D, Young LLC, and Colter Young regularly engages in business in this District, regularly solicits business in this District, and derives substantial revenue from goods sold and used in this District, including in-person sales to persons in this District, and through the internet-based sales that are directed to, and accessible by, persons in this District including through coulteryoung.com, the website for Young C&D.

14. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b).

**FACTUAL BACKGROUND**

15. CR Mining is the assignee of, owns all right, title and interest in, and has standing to sue for infringement of United States Patent No. 9,358,550 directed to a "Black Sand Magnetic Separator," which was filed on June 30, 2015, and issued on June 7, 2016 (the "'550 Patent"). A true and correct copy of the '550 Patent is attached as Exhibit A. The sole inventor of the '550 Patent is David Urick, who owns and operates CR Mining.

16. CR Mining manufactures and sells its Spin It Off™ black sand magnetic separator, which practices at least one claim of the '550 Patent, is the sole and exclusive legitimate manufacturer of these products. CR Mining has sold over a thousand units of the Spin It Off™ black sand magnetic separator since 2015, and continues to spend nearly $1,000.00 every month to market its patented product.

17. CR Mining's Spin It Off™ black sand magnetic separator is prominently marked with the '550 Patent. The patent protection that encompasses the Spin It Off™ black sand magnetic separator is routinely featured in the marketing of the Spin It Off™ black sand

magnetic separator.

18. Young C&D, Young LLC, and Colter Young are infringing the '550 Patent directly, jointly, by inducement, and/or by contributing, by, without authority, making, using, selling, or offering for sale in the United States, and/or inducing another to do the same, including in this District, black sand magnetic separators that embody claims in the '550 Patent. Specifically, Young C&D, Young LLC, and Colter Young are infringing the '550 Patent by making, using, selling, offering for sale, inducing another doing the same) at least the Magic Bit products (collectively, "Magic Bit" or the "Accused Products"), including, for example, the Original Magic Bit, the Magic Bit Mini, and the Magic Bit Max.

19. On information and belief, the Accused Products are available, and are being offered for sale, sold, and inducted to infringe, at least, to individuals within this District, including via e-commerce within this District, which include Colter Young's website at colteryoung.com/ferrous-material-removal.

20. The Accused Products compete directly with CR Mining's Spin It Off™ black sand magnetic separator, causing significant harm to CR Mining.

21. The infringement of the '550 Patent by Young C&D, Young LLC, and Colter Young have been, and continue to be, willful and deliberate.

22. Colter Young and David Urick both attend gold prospector hobbyist expositions, such as those by the Gold Prospectors Association of America, which David Urick and CR Mining have exhibited and sold the Spin It Off™ black sand magnetic separator.

23. On March 2, 2020, counsel for CR Mining sent Young C&D and Colter Young a cease-and-desist letter by email, demanding that Young C&D and Colter Young *inter alia* "cease and desist from any manufacturing, marketing, use, exportation, or sales of any products that may infringe the '550 Patent. The cease-and-desist letter provided a copy of the '550 Patent, a listing of the infringing products (i.e. the Magic Bit), and links to websites demonstrating infringement of the '550 Patent. A true and correct copy of the March 2, 2020, cease-and-desist letter is attached as Exhibit B (enclosed copy of the '550 Patent

omitted).

24. In response, Colter Young posted a copy of the March 2, 2020, cease-and-desist letter on his personal Facebook page (https://www.facebook.com/colter.young.18) on or about March 5, 2020. Colter Young further posted a copy of a letter dated March 3, 2020, indicating that he had received the cease-and-desist letter, and that he would not comply with any demands in the cease-and-desist letter.

25. As such, Young C&D, Young LLC, and Colter Young have had actual notice of its infringing conduct since at least as early as March 2, 2020.

26. With knowledge of the '550 Patent and its infringing conduct, based on at least knowledge of the marked Spin It Off™ product and the March 2, 2020, cease-and-desist letter, and also as of the date of this Complaint going forward, Young C&D, Young LLC, and Colter Young continue to willfully infringe the Asserted Patents—directly and/or by inducement and/or contributorily—by making, using, selling, instructing others and/or offering to sell the Accused Products.

27. CR Mining has suffered and will continue to suffer damages from the acts of infringement by Young C&D, Young LLC, and Colter Young complained of herein.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 9,358,550

28. CR Mining realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-27, above.

29. Young C&D, Young LLC, and Colter Young have directly infringed—either individually and/or jointly—and are still directly infringing, at least Claim 1 of the '550 Patent, literally or by the doctrine of equivalents, by making, using, selling and/or offering to sell the Accused Products. Young C&D, Young LLC, and Colter Young will continue to infringe at least Claim 1 of the '550 Patent unless enjoined by this Court.

30. Young C&D, Young LLC, and Colter Young have induced infringed—either individually and/or jointly—and are still inducing infringing, at least Claim 1 of the '550

Patent, literally or by the doctrine of equivalents, by instructing others on using, making, selling and/or offering to sell the Accused Products. Young C&D, Young LLC, and Colter Young will continue to induce infringe at least Claim 1 of the '550 Patent unless enjoined by this Court.

31. Young C&D, Young LLC, and Colter Young have contributorily infringed—either individually and/or jointly—and are still contributorily infringing, at least Claim 1 of the '550 Patent, literally or by the doctrine of equivalents, by using, making, selling and/or offering to sell the Accused Products. Young C&D, Young LLC, and Colter Young will continue to contributorily infringe at least Claim 1 of the '550 Patent unless enjoined by this Court.

32. The preamble of Claim 1 of the '550 Patent recites: "A magnetic separation device to separate non-magnetic particles from magnetic particles in a wet or dry mixture containing precious and valuable metal ores, said device comprising."

33. The preamble of Claim 1 is non-limiting, as Claim 1 is a structurally complete invention and the preamble states only a purpose or intended use.

34. The preamble states the intended purpose of "separate[ing] non-magnetic particles from magnetic particles in a wet or dry mixture containing precious and valuable metal ores" and is not necessary to give life, meaning, and vitality to Claim 1.

35. Alternatively, and to the extent the preamble is considered limiting, the Magic Bit is a magnetic separation device that separates non-magnetic particles from magnetic particles in a wet or dry mixture containing precious and valuable metal ores.

36. On coulteryoung.com, The Magic Bit includes a "rotating magnetic field caused the ferrous particles to stand on end and walk away the pile of concentrates."

37. The Magic Bit works in both wet and dry mixtures.

38. A further limitation of Claim 1 of the '550 Patent recites: "a non-magnetic cylindrical housing defining an inner longitudinal cylindrical channel, an outer surface, a closed end tool section and a handle section defining an opening to said inner longitudinal

6

channel."

39. The Magic Bit has a non-magnetic cylindrical housing, either literally or under the doctrine of equivalents.

40. The Magic Bit is sold with a clear, non-magnetic plastic housing. Young C&D, Young LLC, and/or Colter Young has used the non-magnetic cylindrical housing, and induces infringement of others, by covering the strong cylindrical bipolar magnet of the Magic Bit with the plastic, non-magnetic housing.

41. Young C&D, Young LLC, and/or Colter Young meets the cylindrical housing limitation literally, by, during its operation, deforming the plastic housing manually to conform the housing to a cylindrical shape.

42. The non-magnetic cylindrical housing of the Magic Bit contains an inner longitudinal cylindrical channel (the inside of the housing), an outer surface (the outside of the housing), a closed end tool section (the "front" of the housing, relative to hilt) and a handle section defining an opening to said inner longitudinal channel (the "rear" of the housing, relative to the hilt).

43. Alternatively, The Magic Bit meets this limitation of a non-magnetic cylindrical housing under the doctrine of equivalents.

44. To the extent the plastic housing is not considered cylindrical during operation, the Magic Bit housing is insubstantially different than the claimed cylindrical housing.

45. The exact shape of the housing for the Magic Bit retains the same functionality as the recited claim language of "a non-magnetic cylindrical housing defining an inner longitudinal cylindrical channel, an outer surface, a closed end tool section and a handle section defining an opening to said inner longitudinal channel."

46. The Magic Bit housing collects magnetic particles on the outer surface of the housing, from the mixture of magnetic and non-magnetic particles, as described in the specification.

47. The '550 Patent recites the function of the housing *inter alia* at col 3, lines 36-40

("the outer surface 24 of the cylindrical housing 20 attracting magnetic components from a mixture of magnetic and non-magnetic particles against the outer surface 24 of the cylindrical housing 20").

48. A further limitation of Claim 1 of the '550 Patent recites: "a non-magnetic radial hilt applied along said outer surface upon said cylindrical housing."

49. The Magic Bit includes the use of a non-magnetic radial hilt applied along said outer surface upon said cylindrical housing, either literally or under the doctrine of equivalents.

50. Young C&D, Young LLC, and/or Colter Young used the Magic Bit in combination with a non-magnetic radial hilt applied along the outer surface of the cylindrical housing.

51. Young C&D, Young LLC, and/or Colter Young uses the Magic Bit in combination with a non-magnetic radial hilt applied along the outer surface of the cylindrical housing.

52. Young C&D, Young LLC, and/or Colter Young used, and have instructed others on using, their hand to operate as a hilt along the outer surface of the cylindrical housing.

53. Young C&D, Young LLC, and/or Colter Young uses, and instructs others on using, their hand to operate as a hilt along the outer surface of the cylindrical housing.

54. Alternatively, The Magic Bit meets the limitation of a non-magnetic radial hilt applied along said outer surface upon said cylindrical housing under the doctrine of equivalents.

55. To the extent the use of the hand is not considered literally a "radial hilt," the use of a hand with the Magic Bit is insubstantially different than the claimed radial hilt.

56. The use of a hand with the Magic Bit retains the same functionality as the recited claim language, of "a non-magnetic radial hilt applied along said outer surface upon said cylindrical housing."

57. The Magic Bit radial hilt maintains the collected magnetic particles on the housing and provides an ability to release the magnetic particles from the housing.

58. The '550 Patent recites the function of the radial hilt *inter alia* at col 5, lines 41-44 ("Without the radial hilt 30, the magnetic particles would simply pass along the cylindrical

8

housing 20 without the ability to release the magnetic particles from the cylindrical housing 20.").

59. A further limitation of Claim 1 of the '550 Patent recites: "a handle section grommet having a central aperture, said handle section grommet inserting within said opening of said open handle section."

60. The Magic Bit has a handle section grommet having a central aperture, said handle section grommet inserting within said opening of said open handle section, either literally or under the doctrine of equivalents.

61. Young C&D, Young LLC, and/or Colter Young used the Magic Bit in combination with a handle section grommet having a central aperture, said handle section grommet inserting within said opening of said open handle section.

62. Young C&D, Young LLC, and/or Colter Young uses the Magic Bit in combination with a handle section grommet having a central aperture, said handle section grommet inserting within said opening of said open handle section.

63. Young C&D, Young LLC, and/or Colter Young used, and instructed others on using, their hand to operate as a handle section grommet, with a hand positioned within the opening of the handle section of the housing.

64. Young C&D, Young LLC, and/or Colter Young uses, and instructs others on using, their hand to operate as a handle section grommet, with a hand positioned within the opening of the handle section of the housing.

65. Alternatively, The Magic Bit meets the limitation of a handle section grommet having a central aperture, said handle section grommet inserting within said opening of said open handle section under the doctrine of equivalents.

66. To the extent the use of the hand is not considered literally a "handle section grommet," the use of a hand with the Magic Bit is insubstantially different than the claimed handle section grommet.

67. The use of a hand with the Magic Bit retains the same functionality as the recited

claim language of, "a handle section grommet having a central aperture, said handle section grommet inserting within said opening of said open handle section."

68. The Magic Bit handle section grommet maintains the connection between the drive shaft and the housing.

69. The '550 Patent shows the function of the handle section grommet at *inter alia* Fig. 2.

70. A further limitation of Claim 1 of the '550 Patent recites: "a drive shaft defining a tool end, a cylindrical neck and a drill attaching end."

71. The Magic Bit has a drive shaft defining a tool end, a cylindrical neck and a drill attaching end.

72. The Magic Bit has a drive shaft that is attached to the strong cylindrical bipolar magnet of the Magic Bit at the tool end of the drive shaft.

73. The drill attaching end of the Magic Bit drive shaft is generally shaped as the inserting end of a hex power drive screwing bit.

74. At least a portion of the drive shaft length between the tool end and the drill attaching end comprises a cylindrical neck.

75. A further limitation of Claim 1 of the '550 Patent recites: "a strong cylindrical bipolar magnet attaching to said tool end of said drive shaft."

76. The Magic Bit has a strong cylindrical bipolar magnet attaching to said tool end of said drive shaft.

77. The Magic Bit has a strong cylindrical bipolar magnet as evidenced by the ability of the Magic Bit to magnetically attract and retain ferrous material to the Magic Bit's strong cylindrical bipolar magnet.

78. A further limitation of Claim 1 of the '550 Patent recites: "said bipolar magnet encased within a friction reducing, non-conductive slip sleeve, said slip sleeve slidably engaged within said inner longitudinal cylindrical channel."

79. The Magic Bit has a bipolar magnet encased within a friction reducing, non-

conductive slip sleeve, said slip sleeve slidably engaged within said inner longitudinal cylindrical channel.

80. The bipolar magnet of the Magic Bit is encased with a friction reduction, non-conductive slip sleeve.

81. The strong cylindrical bipolar magnet of the Magic Bit is surrounded by a plastic coating, which reduces friction and does is non-conductive.

82. The slip sleeve of the Magic Bit is slidably engaged with the inner longitudinal cylindrical channel of the housing.

83. The plastic-coated bipolar magnet of the Magic Bit can slide into the plastic housing, which comprises the inner longitudinal cylindrical channel, and the plastic coating engages with the inner channel of the housing.

84. A further limitation of Claim 1 of the '550 Patent recites: "said drill attaching end extending through said central aperture beyond said handle section grommet with said cylindrical neck in sliding engagement within said central aperture."

85. The Magic Bit has the drill attaching end extending through said central aperture beyond said handle section grommet with said cylindrical neck in sliding engagement within said central aperture.

86. The drill attaching end of the Magic Bit drive shaft, the inserting end of a hex power drive screwing bit, extends through the hand of the operator of the Magic Bit.

87. The cylindrical neck of the drive shaft slidably engages with the hand of the operator of the Magic Bit.

88. A further limitation of Claim 1 of the '550 Patent recites: "said drill attaching end further secured to a rotary drive apparatus delivering rotation to said drive shaft, said bipolar magnet upon said magnetic end rotating within said cylindrical housing and being movable between said tool section and said handle section as said drive shaft is extended or withdrawn within said longitudinal cylindrical channel."

89. The Magic Bit has the drill attaching end further secured to a rotary drive apparatus

delivering rotation to said drive shaft, said bipolar magnet upon said magnetic end rotating within said cylindrical housing and being movable between said tool section and said handle section as said drive shaft is extended or withdrawn within said longitudinal cylindrical channel.

90. The inserting end of the hex power drive screwing bit of the Magic Bit is attached a power drill or power screwdriver, and the power drill or power screwdriver delivers rotation to the Magic Bit drive shaft.

91. The Magic Bit bipolar magnet can be rotated within the plastic housing and can be moved between the forward tool section and the rear handle section of the inner portion of the plastic housing.

92. A further limitation of Claim 1 of the '550 Patent recites: "said rotating bipolar magnet producing a strong alternating and rotating magnetic field around said outer surface of said cylindrical housing, attracting and spinning said magnetic particles within said mixture of magnetic and non-magnetic particles upon said outer surface of said cylindrical housing."

93. The Magic Bit has the rotating bipolar magnet producing a strong alternating and rotating magnetic field around said outer surface of said cylindrical housing, attracting and spinning said magnetic particles within said mixture of magnetic and non-magnetic particles upon said outer surface of said cylindrical housing.

94. When operated, the Magic Bit produces a rotating magnetic field causing the ferrous particles to stand on end and walk away the pile of concentrates.

95. A further limitation of Claim 1 of the '550 Patent recites: "said spinning and rotation casting away said non-magnetic particles for collection as said magnetic particles remain bound to said outer surface of said tool section of said cylindrical shaft, said magnetic particles released from said tool end by withdrawal of said bipolar magnet from said tool end into said handle end."

96. The Magic Bit includes spinning and rotation casting away said non-magnetic

particles for collection as said magnetic particles remain bound to said outer surface of said tool section of said cylindrical shaft, said magnetic particles released from said tool end by withdrawal of said bipolar magnet from said tool end into said handle end.

97. After operation of the Magic Bit, the magnetic particles are magnetically attracted to the bipolar magnetic through the plastic housing of the Magic Bit.

98. The magnetic particles, on the outer, tool end of the Magic Bit housing can be released from the tool end of the housing by withdrawing the bipolar magnet into the rear, handle end of the plastic housing.

99. With knowledge of the '550 Patent, as described above, Young C&D, Young LLC, and Colter Young have induced others, including the customers of Young C&D, Young LLC, and Colter Young to directly infringe at least Claim 1 of the '550 Patent by, for example, distributing or making available instructions for use of the Accused Products, and/or providing technical support for doing the same.

100. On information and belief, Young C&D, Young LLC, and Colter Young does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of at least Claim 1 of the '550 Patent. Young C&D, Young LLC, and Colter Young intends to cause infringement by its customers.

101. To the extent any limitation of Claim 1 of the '550 Patent is not present in the Magic Bit, either literally or under the doctrine of equivalents, with knowledge of the '550 Patent, as described above, Young C&D, Young LLC, and Colter Young have contributorily infringed at least Claim 1 of the '550 Patent through the using, making, selling and/or offering to sell the Magic Bit. The Magic Bit is a material part of the patent invention (i.e. the portion that removes the ferrous material) and is not a staple article of commerce suited for a substantial non-infringing use.

102. The Magic Bit was specifically designed and created by Young C&D, Young LLC, and Colter Young to be used in an infringing combination by others, such as the customers of Young C&D, Young LLC, and Colter Young.

103. On information and belief, Young C&D, Young LLC, and Colter Young does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of at least Claim 1 of the '550 Patent.

104. Young C&D, Young LLC, and Colter Young will continue to infringe the '550 Patent, causing immediate and irreparable harm to CR Mining unless this Court enjoins and restrains the activities of Young C&D, Young LLC, and Colter Young.

105. Because CR Mining sells and distributes competing products, including, for example, the Spin It Off™ black sand magnetic separator—which directly compete with the Accused Products— the acts of infringement by Young C&D, Young LLC, and Colter Young have deprived, and will continue to deprive, CR Mining of sales, profits, and other related revenue that CR Mining would have made or would enjoy in the future; has injured CR Mining in other respects; and will continue to cause CR Mining added injury and damage unless and until the Court enters an injunction prohibiting further infringement, and specifically enjoins further manufacture, use, offer for sale, and sale of the Accused Products.

106. CR Mining is entitled to recover damages adequate to compensate for the infringement of the '550 Patent by Young C&D, Young LLC, and Colter Young, including, but not limited to, lost profits, a reasonable royalty, including a reasonable royalty pursuant to 35 U.S.C. § 154(d), treble damages, pre- and post-judgment interest at the maximum allowable rate, costs, attorneys' fees, and other such relief this Court deems proper.

107. The infringement of the '550 Patent by Young C&D, Young LLC, and Colter Young is willful and justifies a trebling of damages pursuant to 35 U.S.C. § 284. Further, this is an exceptional case supporting an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

//

//

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Columbia River Mining Supplies, LLC respectfully requests that the Court enter judgment in its favor and against Young C&D, Young LLC, Colter Young, and Jane Doe Young, jointly and severally, and provide Columbia River Mining Supplies, LLC the following relief:

A. Order, adjudge, and decree that the '550 Patent is valid, enforceable, and infringed by Young C&D, Young LLC, and Colter Young;

B. Enter a permanent injunction against Young C&D, Young LLC, and Colter Young enjoining them, their directors, officers, agents, employees, successors, subsidiaries, assigns, and all persons acting in privity or in concert or participation with Young C&D, Young LLC, and Colter Young from making, using, selling, or offering for sale in the United States, or importing into the United States (or inducing one or more third parties to do the same), any and all products and/or services embodying the patented inventions claimed in the '550 Patent;

C. Award CR Mining its damages for patent infringement pursuant to 35 U.S.C. §§ 284 and 154(d), and pre- and post-judgment interest as allowed by law;

D. Order, adjudge, and decree that Young C&D, Young LLC, Colter Young's infringement of the Asserted Patents has been deliberate and willful, and award CR Mining treble damages under 35 U.S.C. § 284;

E. Find that this case is "exceptional" under 35 U.S.C. § 285, and award CR Mining its costs and reasonable attorney's fees as provided in 35 U.S.C. § 285; and

F. Award such other and further relief as the Court deems just and proper.

//
//
//
//

**REQUEST FOR TRIAL BY JURY**

Plaintiff Columbia River Mining Supplies, LLC respectfully requests a trial by jury on all issues so triable.

DATED this 2th day of April 2020.

                        ___s/Matthew L. Bycer_____
                          Matthew L. Bycer
                          AZ Bar No. 025391
                          Bycer Law, PLC
                          7220 N. 16th St., Suite H
                          Phoenix, AZ 85020
                          (602) 944-2277