UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COLUMBIA RIVER MINING SUPPLIES, LLC, <br><br>                 Plaintiff, <br><br> v. <br><br> COLTER YOUNG CONSULTING & DESIGN, COLTER YOUNG CONSULTING LLC, and COLTER YOUNG, <br><br>                 Defendants. | Case No. 1:20-cv-00384-JCG <br><br> **OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |

Before the Court are a Motion for Partial Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiff Columbia River Mining Supplies, LLC ("Plaintiff" or "Columbia River Mining") and a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Colter Young Consulting & Design, Colter Young Consulting LLC, and Colter Young (collectively, "Defendants"). Plaintiff moves for partial summary judgment on its claim of patent infringement, having brought five causes of action in its Amended Complaint: (1) patent infringement, (2) trademark infringement and unfair competition under federal law, (3) trademark infringement and unfair competition and trademark under Arizona common law, (4) commercial disparagement, and (5) tortious interference with business expectancy. Columbia River Mining Supplies LLC's Mot. Part. Summary J. ("Pl.'s

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 1**

Mot.") (Dkt. 85); Mem. in Supp. Columbia River Mining Supplies LLC's Mot. Part.

Summary J. ("Pl.'s Br.") (Dkt. 89); Amended Complaint ("Am. Compl.") at 6–21 (Dkt.

14).  Defendants move for summary judgment on all counts.  Defs.' Mot. Summary J.

("Defs.' Mot.") (Dkt. 87); Mem. in Supp. Defs.' Mot. Summary J. ("Defs.' Br.") (Dkt.

87-1).  The Court denies Plaintiff's Motion for Partial Summary Judgment and denies

Defendants' Motion for Summary Judgment.

## BACKGROUND

### A. Procedural History

Plaintiff commenced the action on April 29, 2020, when it filed an Amended

Complaint in the District of Arizona seeking declaratory and injunctive relief, punitive

relief, and monetary relief.  See Am. Compl.  On August 4, 2020, the instant matter was

transferred to the District of Idaho.  Order (August 4, 2020) (Dkt. 25).  On May 20, 2021,

the Parties sought construction of five claim terms in Claim 1 of the '550 Patent.  Joint

Claim Construction and Prehearing Statement (Dkt. 58).  The Parties filed their

respective briefs and the Court held a Markman hearing.  See Dkts. 67, 68, 74, 75, 76, 78.

At the Markman hearing on August 26, 2021, Defendants withdrew their request for

claim construction of the following terms: "tool section," "handle section," "handle

section grommet," and "movable between."  Dkt. Entry (Dkt. 78); Markman Hr'g

1:38:20–1:40:25 (time stamp from the recording on file with the Court).

On June 7, 2022, the Court entered an Opinion and Order[1] to construe the disputed claim terms as follows: "radial hilt" as "raised portion"; "applied along" as "attached to"; "inserting within" as "positioned in"; "in sliding engagement within" as "sliding within"; and "slidably engaged within" as "sliding within."  Opinion and Order on Claim Construction (June 7, 2022) ("Claim Construction Order") at 12 (Dkt. 80).

On August 5, 2022, Plaintiff filed its Motion for Partial Summary Judgment ("Plaintiff's Motion"), its Memorandum in Support of its Motion for Partial Judgment, and a Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment.  Columbia River Mining Supplies LLC's Mot. Part. Summary J. ("Pl.'s Mot.") (Dkt. 85); Mem. in Supp. Columbia River Mining Supplies LLC's Mot. Part. Summary J. ("Pl.'s Br.") (Dkt. 89); Statement of Undisputed Material Facts in Supp. Columbia River Mining LLC's Mot. for Part. Summary J. ("Pl.'s SUMF") (Dkt. 89). Defendants[2] filed their Motion for Summary Judgment ("Defendants' Motion"), a Memorandum in Support of their Motion for Summary Judgment, and a Statement of Material Facts in Support of their Motion for Summary Judgment.  Defs.' Mot. Summary J. ("Defs.' Mot.") (Dkt. 87); Mem. in Supp. Defs.' Mot. Summary J. ("Defs.' Br."), Dkt.

---

[1]  On July 20, 2021, the Court granted Plaintiff's Motion to Deny or Defer Defendants' previous Motion for Summary Judgment filed on May 28, 2021 (Dkt. 59) and ordered that Plaintiff's response to the motion be deferred until after the Court issued its claim construction ruling.  Order (July 20, 2021) (Dkt. 72).  On June 27, 2022, the Court ordered the motion to be withdrawn.  Order (June 27, 2022) (Dkt. 83).

[2]  Defendants only list Colter Young Consulting, LLC and Colter Young as movants in Defendants' Motion.  However, all three defendants are included in the motion's party names and all other briefings.  Based on these filings, the Court infers that all three defendants were intended to be listed as movants in Defendants' Motion.

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 3**

87-1; Defs.' Statement of Material Facts in Supp. Defs.' Mot. Summary J. ("Defs.' SUMF") (Dkt. 87-2).

On August 26, 2022, Defendants filed their Memorandum in Response to Plaintiff's Motion for Summary Judgment and a Statement of Disputed Facts in Response to Plaintiff's Statement of Undisputed Fact.  Defs.' Mem. Resp. Pl.'s Mot. Summary J. ("Defs.' Resp.") (Dkt. 91); Defs.' Statement of Disputed Facts Resp. Pl.'s Statement of Undisputed Fact ("Defs.' SDMF") (Dkt. 92).  Plaintiff filed its Memorandum in Opposition to Defendants' Motion for Summary Judgment and a Statement of Disputed Material Facts in Opposition to Defendants' Motion for Summary Judgment.  Mem. Opp'n Defs.' Mot. Summary J. ("Pl.'s Resp.") (Dkt. 94); Statement of Disputed Material Facts in Opp'n Defs,' Mot. Summary J. ("Pl.'s SDMF") (Dkt. 94-1).

On September 9, 2022, Defendants filed their Reply in Support of Motion for Summary Judgment.  Defs.' Reply in Supp. Mot. Summary J. ("Defs.' Reply") (Dkt. 95).  Plaintiff filed its Reply Memorandum in Support of its Motion for Partial Summary Judgment.  Reply Mem. in Supp. Columbia River Mining Supplies LLC's Mot. Part. Summary J. ("Pl.'s Reply") (Dkt. 96).

**B. Undisputed Facts**

The Court finds that the following facts are undisputed.

1.  <u>The Parties</u>

Plaintiff Columbia River Mining ("Plaintiff" or "Columbia River Mining") manufactures and sells hobbyist gold and iron prospecting equipment, including the Spin

It Off™ black sand magnetic separator, which practices the United States Patent No. 9,358,550 (the "'550 Patent" or "Asserted Patent").  Pl.'s SUMF ¶¶ 1–2 at 2; Defs.' SDMF ¶¶ 1–2 at 1.  Columbia River Mining is owned and operated by David Urick, who invented the '550 Patent.  Pl.'s SUMF ¶ 3 at 2; Defs.' SDMF ¶ 3 at 2.

Defendants Colter Young Consulting & Design ("Colter Young C&D"), Colter Young Consulting, LLC ("Colter Young Consulting"), and Colter Young manufacture and sell gold mining and processing equipment, *inter alia* the Magic Bit, Rollie Pollie, and the Dry Electro-Magnetic Separator ("DEMS") products (collectively, "Accused Products").  Pl.'s SUMF ¶ 11 at 3; Defs.' SDMF ¶ 11 at 2.  Colter Young Consulting is a single-member limited liability company owned by Colter Young.  Pl.'s SUMF ¶ 10 at 3; Defs.' SDMF ¶ 10 at 2; Defs.' SUMF ¶ 1 at 1; Pl.'s SDMF ¶ 1 at 2.  Colter Young and David Urick both attend gold prospector hobbyist expositions, such as those by the Gold Prospectors Association of America, in which David Urick and Columbia River Mining have exhibited and sold the Spin It Off™ black sand magnetic separator.  Pl.'s SUMF ¶ 21 at 4; Defs.' SDMF ¶ 21 at 4.

The Accused Products compete directly with Columbia River Mining's Spin It Off™ black and magnetic separator.  Pl.'s SUMF ¶ 20 at 4; Defs.' SDMF ¶ 20 at 3.  On March 2, 2020, Plaintiff sent a cease-and-desist letter to Defendants to cease and desist the manufacturing of the Magic Bit.[3]  Defs.' SUMF ¶ 3 at 1; Pl.'s SDMF ¶ 3 at 2.  Colter Young responded to Plaintiff's letter, and Defendants posted the letter on Facebook,

---

[3]  Plaintiff disputes that Exhibit 1 is complete and that the letter "included generic allegations."  Pl.'s SDMF ¶ 1 at 2.

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 5**

stating it was made in "bad faith" and was meant "to intimidate the little guy."  Defs.'
SUMF ¶¶ 4, 6 at 1; Pl.'s SDMF ¶¶ 4, 6 at 2.  Defendants shortly deleted the post.  Defs.'
SUMF ¶ 8 at 1; Pl.'s SDMF ¶ 8 at 2.

　　　2.  Asserted Patent

　　　The '550 Patent is titled the Black Sand Magnetic Separator, which is "[a] primary
ore separation device used to remove magnetic particles from non-magnetic particles in a
mixture 6tilize[ing] a spinning magnet within a non-conductive cylindrical tube . . . [that]
separates and spins away the non-magnetic particles."  Claim Construction Order at 2–3.
"[T]he device [is] generally used upon mixed ore materials containing gold and other
precious metals contained within the non-magnetic particles."  Id. at 3.

　　　The technology of the '550 Patent is generally directed to a magnetic separation
device.  Pl.'s SUMF ¶ 4 at 2; Defs.' SDMF ¶ 4 at 2.  It solves the problem of gold
sticking to magnetic particles through an innovative design to remove magnetic material
from black sands, while ensuring gold is not accidentally removed with the black sands.
Pl.'s SUMF ¶ 6 at 2; Defs.' SDMF ¶ 6 at 2.  Valuable precious metals, such as gold, are
known to be contained in black sands, but the presence of the heavier, magnetic black
sands makes traditional panning techniques difficult, as the black sand will not pan away.
Pl.'s SUMF ¶ 5 at 2; Defs.' SDMF ¶ 5 at 2.  Traditional solutions include using magnets
alone to separate out the magnetic black sand from the non-magnetic gold, but gold
flecks can get stuck between magnetic particles, causing a loss of the valuable gold.  Id.
The magnetic particles from the mixture are attracted to the outer surface 24 of the tool

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 6**

section 25, while the non-magnetic particles remain in the mixture.  Pl.'s SUMF ¶ 8 at 2;
Defs.' SDMF ¶ 8 at 2.  After the magnetic particles of the mixture have been separated
and are clinging to the outer surface 24 of the tool section 25, the magnetic particles can
be released by withdrawing the bipolar magnet into the handle section 27.  Pl.'s SUMF ¶
9 at 2; Defs.' SDMF ¶ 9 at 2.

### 3.  Accused Products

The Magic Bit is sold both domestically and internationally as a kit that includes
a drill adapter.[4]  Pl.'s SUMF ¶ 12 at 3; Defs.' SDMF ¶ 12 at 2.  The Magic Bit can be
inserted into a mixture of magnetic and non-magnetic particles and then operated using a
drill or other rotary motor.[5]  Pl.'s SUMF ¶ 26 at 5; Defs.' SDMF ¶ 26 at 4.

The Rollie Pollie is a product contained inside of the DEMS, as the DEMS is sold
as a package or a kit with a Rollie Pollie.  See Pl.'s SUMF ¶ 14 at 4; Defs.' SDMF ¶ 14 at
3.

The DEMS is sold as a package or kit with a Rollie Pollie, and can also be sold with
an integral motor.  Pl.'s SUMF ¶ 14 at 4; Defs.' SDMF ¶ 14 at 3.  The DEMS separates
magnetic particles from a mixture of magnetic and non-magnetic particles.  Pl.'s SUMF
¶ 22 at 4–5; Defs.' SDMF ¶ 22 at 3.  The DEMS uses a bipolar magnet (contained inside
a product called the Rollie Pollie) which is to be slid and inserted into the housing of the

---

[4]  Defendants dispute that the Magic Bit was sold in a kit with both a case and drill
adapter.  They contend that the Magic Bit has been sold without a case and also without a
drill adapter.  Defs.' SDMF ¶ 12 at 2.
[5]  Defendants dispute only that this is not material to the Asserted Patent and not in
context.

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 7**

DEMS.  Id.  To operate the product, the Rollie Pollie is switched on, spinning the magnet. Id.  A mixture of particles is then poured into the top funnel to fall over the tool section housing.  The falling magnetic particles are attracted to the magnetic field through the housing, and adhere to the outside of the housing.  Id.  The rotating internal magnet causes the magnetic particles to rotate over to the "left" channel while non-magnetic particles continue to slide down the "right" channel.  Id.  Defendants have sold multiple versions of the DEMS product, which have cosmetic differences but ultimately operate in the same way.  Pl.'s SUMF ¶ 23 at 5; Defs.' SDMF ¶ 23 at 3.

## JURISDICTION

The Court has subject matter jurisdiction over this action over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## LEGAL STANDARD

Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  See id.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party satisfies the initial burden, the opposing party must produce specific

facts showing a genuine issue of material fact for trial.  See <u>FTC v. Stefanchik</u>, 559 F.3d

924, 929 (9th Cir. 2009) (citing <u>Anderson</u>, 477 U.S. at 257).  Conclusory or speculative

testimony in affidavits and moving papers is insufficient to raise genuine issues of fact.

<u>See</u> <u>Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.</u>, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than "a scintilla of evidence or evidence

that is merely colorable or not significantly probative."  <u>Addisu v. Fred Meyer, Inc.</u>, 198

F.3d 1130, 1134 (9th Cir. 2000); <u>see also</u> <u>Stefanchik</u>, 559 F.3d at 929 ("A non-movant's

bald assertions or a mere scintilla of evidence in his favor are both insufficient to

withstand summary judgment." (citation omitted)).  When determining if a party is

entitled to summary judgment, the Court must view the evidence in the light most

favorable to the opposing party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475

U.S. 574, 587–88 (1986).

**DISCUSSION**

## I.  Expert Testimony

The Parties raise procedural and other concerns regarding each other's motions,

including expert testimony issues.  Pl.'s Resp. at 1–4; Defs.' Reply at 3–5; Pl.'s Reply at

1–2.  Both Parties challenge the declarations filed by each party, based on the allegation

that each witness only qualifies as a lay witness.  Defs.' Reply at 3–5; Pl.'s Resp. at 2–4;

Pl.'s Reply at 1–2; Decl. Michael B. Marion in Supp. Mot. Part. Summary J. ("Marion

Decl.") (Dkt. 86); Decl. Colter Young in Supp. Defs.' Mot. Summary J. ("Young Decl.")

(Dkt. 90).  The Court construes these challenges as raising issues of expert testimony

under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) ("Daubert").

Plaintiff contends that various statements set forth in Defendants' Statement of

Material Facts are improper opinion testimony.[6]  Pl.'s Resp. at 2–4; Pl.'s Reply at 1–2.;

see Pl.'s SDMF.  Plaintiff argues that Defendants rely on Colter Young as an unqualified

and prejudicial expert witness, undisclosed under Fed. R. Civ. P. 26(a)(2)(A), (B), or (C),

and that Colter Young's declaration provides no foundation for evaluating his

qualifications as an expert.  Pl.'s Reply at 2–3.

Defendants reply that: (1) Plaintiff acknowledges that the deadline for expert

disclosures has not occurred; (2) "Colter Young is permitted under FRE 702 to testify on

his own personal knowledge of the products and prototypes that he personally invented

and developed, including how these products and prototypes work"; and (3) Colter

Young needs to be able to establish his own testimony because of Plaintiff's claim of

defamation[7] against Colter Young and his company, deriving from Colter Young's

statement that Plaintiff had sent allegations of patent infringement in bad faith.  Defs.'

Reply at 4–5.  Defendants contend that Colter Young's testimony pertains to their

"defense that the allegation of bad faith infringement was a statement of opinion because

---

[6]  Plaintiff objects to Defendants' Statement of Material Facts ¶¶ 7, 10, 11, 12, 13, 14, 15,
17, 20, and 21.  Pl.'s Reply at 4.  Plaintiff also objects to Young Exhibits 7, 9, 14, and 19
as inadmissible demonstrative evidence under FRE 401–403; and Young Exhibits 3, 4, 5,
6, 10, 11, 12, 13, and 18 as material not produced in discovery, lacking dates or other
identifying marks indicating the source of such material under Fed. R. Civ. P. 37 and
FRE 403.  Pl.'s Resp. at 4.

[7]  The Amended Complaint alleges commercial disparagement, which is a claim for
defamation.  See Am. Compl. ¶¶ 137–46.

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 10**

in [Colter] Young's opinion, the allegations of infringement were made in bad faith." Id. at 5.  Defendants also contend that Plaintiff relies on Michael B. Marion, a lay fact witness, "for evidentiary support as to the colors of Plaintiff's alleged device" rather than the testimony of his client.  Id. at 3.

The Parties have not filed Daubert motions to demonstrate that the declaring witnesses qualify as experts under FRE 702, and no deadlines have been established for the disclosure of expert testimony.  It is premature for the Court to rule on the Parties' challenges to expert testimony at this time.

## II.    Patent Infringement (Count I)

Plaintiff and Defendants move for summary judgment on Count I.  Pl.'s Mot.; Defs.' Mot.  Plaintiff argues that the Magic Bit and the DEMS Product infringe the Asserted Patent under several provisions of § 271 of the Patent Act, 35 U.S.C. § 271. Pl.'s Br. at 8–15.  Defendants contend that the Accused Products do not infringe the Asserted Patent.[8]  Defs.' Br. at 3–9.

### A.  Literal Infringement

Count I alleges that Defendants directly infringed literally or by the doctrine of equivalents, by making, using, selling and/or offering to sell the Accused Products under 35 U.S.C. § 271(a).  See Am. Compl. ¶ 40.  A literal infringement analysis entails two steps: (1) determining the meaning and scope of the patent claims asserted to be

---

[8]  Plaintiff also asserts that Defendants use the wrong claim construction for its non-infringement arguments for the claim term "inserting within" in contravention of the Court's Order, which is fatal to their motion.  Pl.'s Resp. at 5.

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 11**

infringed; and (2) comparing the properly construed claims to the device accused of infringing.  Duncan Parking Techs., Inc. v. IPS Grp., Inc., 914 F.3d 1347, 1360 (Fed. Cir. 2019) (citations omitted).  Under 35 U.S.C. § 271(a), direct infringement exists when:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the    patent    therefor,    infringes    the    patent.

35 U.S.C. § 271(a).  Under this form of liability, a defendant's mental state is irrelevant because direct infringement is a strict-liability offense.  See Glob.-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 761 n.2 (2011).

Claim 1 of the Asserted Patent[9] states:

A magnetic separation device to separate non-magnetic particles from magnetic particles in wet or dry mixture containing precious and valuable metal ores, said device comprising:

a non-magnetic cylindrical housing defining an inner longitudinal cylindrical channel, an outer surface, a closed end tool section and a handle section defining an opening to said inner longitudinal channel;

a non-magnetic *radial tilt applied along*[10] said outer surface upon said cylindrical housing;

a handle section grommet having a central aperture, said handle section grommet *inserted within*[11] said opening of said open handle section;

a drive shaft defining a tool end, a cylindrical neck and a drill attaching end;

---

[9]  Claim 1 is the only independent claim at issue in the '550 Patent.

[10]  The limitation reads "a non-magnetic [raised portion] [attached to] said outer surface upon said cylindrical housing" when replaced with the claim construction language.

[11]  The limitation reads "a handle section grommet having a central aperture, said handle section grommet [positioned in] said opening of said open handle section" when replaced with the claim construction language.

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 12**

a strong cylindrical bipolar magnet attaching to said tool end of said drive shaft, said bipolar magnet encased within a friction reducing, non-conductive slip sleeve, said slip sleeve *sliding engaged within*[12] said inner longitudinal cylindrical channel, said drill attaching end extending through said central aperture beyond said handle section grommet with said cylindrical neck *sliding engaged within* said central aperture, said drill attaching end further secured to a rotary drive apparatus delivering rotation to said drive shaft, said bipolar magnet upon said magnetic end rotating within said cylindrical housing and being movable between said tool section and said handle section as said drive shaft is extended or withdrawn within said longitudinal cylindrical channel, said rotating bipolar magnet producing a strong alternating and rotating magnetic field around said outer surface of said cylindrical housing, attracting and spinning said magnetic particles within said mixture of magnetic and non-magnetic particles upon said outer surface of said cylindrical housing, said spinning and rotation casting away said non-magnetic particles for collection as said magnetic particles remain bound to said outer surface of said tool section of said cylindrical shaft, said magnetic particles released from said tool end by withdrawal of said bipolar magnet from said tool end into said handle end.

See Claim Construction Order; Am. Compl. at Ex. A ("'550 Patent Claim") (Dkt. 14-1).

Plaintiff asserts that (1) the "nonmagnetic radial hilt"; (2) the "handle section grommet"; (3) the "drill attaching end extending through said central aperture beyond said handle section grommet with said cylindrical neck in sliding engagement within said central aperture"; and (4) the "magnetic particles released from said tool end by withdrawal of said bipolar magnet from said tool end into said handle end" are present in Defendants' Accused Products and that the Accused Products literally infringe the '550 Patent.  Pl.'s Br. at 7–8.  Defendants argue that the Accused Products do not literally

---

[12]  The limitation reads "a strong cylindrical bipolar magnet attaching to said tool end of said drive shaft, said bipolar magnet encased within a friction reducing, non-conductive slip sleeve, said slip sleeve [sliding within] said inner longitudinal cylindrical channels . . . ." when replaced with the claim construction language.

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 13**

infringe because none of Defendants' products has a "handle section grommet having a central aperture, said handle section grommet [positioned in] said opening of said open handle section' such that the 'drill attaching end [of the drive shaft] extending through said central aperture beyond said handle section grommet with said cylindrical neck [sliding within] said central aperture" and "neither the Magic Bit nor Magic Bit max has a non-magnetic [raised portion] [attached to] said outer surface upon said cylindrical housing." Defs.' Br. at 5.

       1.   <u>"Non-magnetic radial hilt"</u>

Claim 1 includes the limitation "a non-magnetic *radial tilt applied along* said outer surface upon said cylindrical housing." '550 Patent Claim.  The limitation reads "a non-magnetic [raised portion] [attached to] said outer surface upon said cylindrical housing" when replaced with the Court's claim construction language.  <u>See</u> Claim Construction Order.  Here, Plaintiff contends that a radial hilt, construed as a raised portion, is present in Defendants' Accused Products.  Pl.'s Br. at 8–9 (citing Pl.'s SUMF ¶¶ 29–31).  Defendants assert that a radial hilt, construed as a raised portion, is not present in Defendants' Accused Products.  Defs.' Resp. at 9–10.  Because there are material facts in dispute over whether the DEMS includes a raised portion on the outside of the housing and extends away from the housing, this issue must be resolved by a factfinder and not at the summary judgment stage.

       2.   <u>"Handle section gommet"</u>

Claim 1 includes the limitation "a handle section grommet having a central

aperture, said handle section grommet inserting within said opening of said open handle section." '550 Patent Claim.  The Court construed the claim to read "a handle section grommet having a central aperture, said handle section grommet [positioned in] said opening of said open handle section."  See Claim Construction Order.  Plaintiff asserts that a literally infringing handle section grommet is present in Defendants' Accused Products.  Pl.'s Br. at 9–10 (citing Pl.'s SUMF ¶¶ 32–33).  Defendants contend that a handle section grommet is not present in Defendants' Accused Products.  Defs.' Br. at 7–8; Defs.' Resp. at 5, 7–8.  Plaintiff argues alternatively that an infringing handle section grommet is present in Defendants' Accused Products under the doctrine of equivalents upon application of the "function-way-result" test.  Pl.'s Br. at 10–11.  Therefore, whether a handle section grommet is present is a genuine dispute of material fact to be determined by a factfinder and not resolvable on summary judgment.

3.  Drill attaching end in sliding engagement within central aperture"

Claim 1 includes the limitation "drill attaching end extending through said central aperture beyond said handle section grommet with said cylindrical neck in sliding engagement within said central aperture." '550 Patent Claim.  The Court construed "in sliding engagement within" as "sliding within."  See Claim Construction Order.

Plaintiff asserts that a drive shaft within a plastic housing that extends beyond the handle section grommet by sliding within the central aperture created by the handle section grommet is present in Defendants' Accused Products.  Pl.'s Br. at 11–13 (citing Pl.'s SUMF ¶¶ 35–37, 42).  Defendants assert that none of the Accused Products has a

handle section grommet within which the neck of the drive shaft slides.  Defs.' Br. at 9.

Therefore, whether a drill attaching end extending through said central aperture beyond

said handle section grommet with said cylindrical neck in sliding engagement within,

construed as sliding within, said central aperture is present is an issue of disputed fact to

be determined by a factfinder and not at the summary judgment stage.

### B.  Doctrine of Equivalents

Infringement under the doctrine of equivalents occurs when a claimed limitation

and the accused product perform substantially the same function in substantially the same

way to obtain substantially the same result.  V-Formation, Inc. v. Benetton Grp. SpA, 401

F.3d 1307, 1313 (Fed. Cir. 2005) (citation omitted).  Under the doctrine of equivalents, "a

product or process that does not literally infringe upon the express terms of a patent claim

may nonetheless be found to infringe if there is 'equivalence' between the elements of the

accused product or process and the claimed elements of the patented invention."  Primos,

Inc. v. Hunter's Specialties, Inc., 451 F.3d 841, 850 (Fed. Cir. 2006).  "The 'all

limitations rule' restricts the doctrine of equivalents by preventing its application when

doing so would vitiate a claim limitation."  Id.  Further, the doctrine cannot be applied

broadly "so as to effectively eliminate a claim element in its entirety."  Id.  "If a court

determines that a finding of infringement under the doctrine of equivalents would entirely

vitiate a particular claim element, then the court should rule that there is no infringement

under the doctrine of equivalents."  Id.

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 16**

Equivalence can be analyzed under either: (1) the insubstantial differences test, under which an accused product's feature is equivalent to a claim limitation if the differences between the two are insubstantial to a person of ordinary skill in the art, Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 813 (Fed. Cir. 2002); or (2) the "function-way-result" test, which requires a showing for each claim limitation that the accused product performs substantially the same function in substantially the same way with substantially the same result.  Crown Packaging Tech., Inc. v. Rexam Beverage Can Co., 559 F.3d 1308, 1312 (Fed. Cir. 2009).

Because there are material facts in genuine dispute over: (1) whether the DEMS includes a raised portion on the outside of the housing, and extends away from the housing; (2) whether a handle section grommet is present in the Accused Products; and (3) whether a drill attaching end extending through said central aperture beyond said handle section grommet with said cylindrical neck in sliding engagement within, construed as sliding within, said central aperture, is present in the Accused Products, the Court cannot determine literal infringement under the doctrine of equivalents at the summary judgment stage.

## C.  Induced Infringement

Count I alleges that Defendants induced infringement literally or by the doctrine of equivalents, by making, using, selling and/or offering to sell the Accused Products under 35 U.S.C. § 271(c).  See Am. Compl. ¶ 41.  Plaintiff contends that Defendants induced patent infringement of the Accused Products by (1) posting videos instructing others to

make and use the infringing Accused Products and (2) included instructions with its products to inform its customers on how to use the Accused Products.  Pl.'s Br. at 15–16.

In contrast to direct infringement, liability for inducing infringement attaches only if the defendant knew of the patent and that "the induced acts constitute patent infringement."  Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 639 (2015); see also 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer.").  It is undisputed that Defendants had third parties create videos demonstrating how to use the Accused Products and included instructions on how to assemble and use the DEMS product with the Rollie Pollie as a part of every sale.  Pl.'s SUMF ¶¶ 41, 43 at 9; Defs.' SDMF ¶¶ 41, 43 at 6.  It is disputed, however, whether Defendants had knowledge of the Asserted Patent before Defendants made their products, Defs.' SDMF ¶ 45 at 6, and there are material facts in genuine dispute for the claim of literal infringement.  Therefore, summary judgment cannot be granted on the claim of induced infringement literally or by the doctrine of equivalents.

### D. Contributory Infringement

Count I alleges that Defendants contributorily infringed literally or by the doctrine of equivalents, by making, using, selling and/or offering to sell the Accused Products under 35 U.S.C. § 271(c).  See Am. Compl. ¶ 42.  Contributory infringement is a form of secondary liability for direct infringement and exists when:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 18**

> especially made or especially adapted for use in an infringement of such
> patent, and not a staple article or commodity of commerce suitable for
> substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).  Similar to induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement.  Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 488 (1964).  Because it is disputed whether Defendants had knowledge of the Asserted Patent before Defendants made their products, Defs.' SDMF ¶ 45 at 6, and there are material facts in genuine dispute for the claim of literal infringement, summary judgment cannot be granted on the claim of contributory infringement.

### E.  Selling and Exporting Infringing Components Outside the United States

Plaintiff contends that Defendants infringe the '550 Patent under 35 U.S.C. § 271(f) for supplying all (or a substantial portion) of the components of the Accused Products intended for assembly overseas.  Pl.'s Br. at 17.  Under 35 U.S.C. § 271(f)(1):

> Whoever without authority supplies or causes to be supplied in or from the
> United States all or a substantial portion of the components of a patented
> invention, where such components are uncombined in whole or in part, in
> such a manner as to actively induce the combination of such components
> outside the United States in a manner that would infringe the patent if such
> combination occurred within the United States shall be liable as an infringer.

35 U.S.C. § 271(f)(1).  Because there are material facts in genuine dispute for the claim of literal infringement, summary judgment cannot be granted on this claim.

### F.  Willful Infringement

Plaintiff argues that Defendants have intentionally, wantonly, and openly infringed the '550 Patent since 2019 under 35 U.S.C. § 271(g).  See Pl.'s Br. at 18–19.  Defendants

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 19**

contend that Plaintiff fails to prove willful infringement, and if the Court finds

infringement, Defendants' belief of noninfringement was highly reasonable.  Defs.' Resp.

at 10.  Willful infringement is established when the infringer is aware of the patent and

deliberately or intentionally infringed the patent.  Halo Elecs., Inc. v. Pulse Elecs., Inc.,

136 S. Ct. 1923, 1933–34 (2016); see also nCube Corp. v. Seachange Int'l, Inc., 436 F.3d

1317, 1324 (Fed. Cir. 2006).  Because it is disputed whether Defendants had knowledge

of the Asserted Patent before Defendants made their products and there are material facts

in genuine dispute for the claim of literal infringement, summary judgment cannot be

granted on this claim.

### G. Damages

Defendants assert that even if Defendants are found to infringe, Plaintiff is not

entitled to damages during the period in which the Asserted Patent was expired under 35

U.S.C. § 41(c)(2).  Defs.' Br. at 9.  Plaintiff argues in opposition that Defendants cannot

claim intervening rights because Defendants admitted to having sold infringing products

before July 13, 2020.  Pl.'s Resp. at 11.  Because there are there are material facts in

genuine dispute for the claims of infringement, it is premature to determine damages at

this time.

Accordingly, the Court finds that genuine issues of material fact remain as to

infringement of the '550 Patent and denies Plaintiff's Motion and Defendants' Motion as

to Count I.

## II.      Trademark Infringement and Unfair Competition (Counts II--III)

Count II alleges that Defendants (1) use Plaintiff's marks and trade dress in a manner that is likely to cause confusion as to the origin of Plaintiff's products with Defendants' products; and (2) reproduce the marks and trade dress of Plaintiff and Plaintiff's product line without authorization or authority in a matter that constitutes unfair competition under federal law or § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Am. Compl. ¶¶ 118–30.

### A. Standing

Defendants argue that Plaintiff lacks standing to bring its claims for trademark infringement and unfair competition because Plaintiff cannot demonstrate that any harm suffered was proximately caused by Defendants, citing to Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014).  Defs.' Br. at 13–15.  Plaintiff asserts that it has standing because it is a direct competitor of Defendants' products.  Pl.'s Resp. at 15–17.

In Lexmark, the U.S. Supreme Court held that the defendant alleged an adequate basis to proceed under § 1125(a) but could not obtain relief without evidence of injury proximately caused by Lexmark's alleged misrepresentations.  Lexmark, 572 U.S. at 140. The Ninth Circuit held that to satisfy this proximate-cause requirement, a plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising, and that . . . occurs when deception of consumers causes them to withhold trade from the plaintiff" and that the "'paradigmatic' injury from false

advertising is 'diversion of sales to a direct competitor.'" <u>ThermoLife Int'l, LLC v. Compound Sols., Inc.</u>, 848 F. App'x 706, 709 (9th Cir. 2021) (internal quotations and citations omitted).  It is undisputed that the Accused Products compete directly with Plaintiff's Spin It Off™ black sand magnetic separator.  Pl.'s SUMF ¶ 20 at 4; Defs.' SDMF ¶ 20 at 3, making Plaintiff and Defendants direct competitors.  Therefore, the Court concludes that Plaintiff has standing to bring these claims.

### B.  Federal Law

To successfully maintain an action for trademark infringement, false designation of origin, and unfair competition under the Lanham Act, Plaintiff must show that it has a valid trademark and that the defendant's use of the mark is likely to cause confusion.  <u>Vallavista Corp. v. Amazon.com, Inc.</u>, 657 F. Supp. 2d 1132, 1136 (N.D. Cal. 2008); <u>see also</u> <u>Brookfield Commc'ns. v. W. Coast Entm't Corp.</u>, 174 F.3d 1036, 1046 (9th Cir. 1999).  The Lanham Act prohibits the use in commerce of:

> any word, term, name, symbol, or device, or any combination thereof . . . likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

Lanham Act § 43(a)(1), 15 U.S.C. § 1125(a)(1).  "It is well established that trade dress can be protected under federal law.  The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source."  <u>TrafFix Devices, Inc. v. Mktg. Displays, Inc.</u>, 532 U.S. 23, 28 (2001).  The primary purpose of trademark law is to ensure that customers are able to identify the source of

goods.  <u>Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.</u>, 457 F.3d 1062, 1067 (9th

Cir. 2006) (citing <u>Qualitex Co. v. Jacobson Prods. Co.</u>, 514 U.S. 159, 164 (1995)).  To

succeed on its trade dress infringement claims, Plaintiff must prove three elements: (1)

nonfunctionality; (2) distinctiveness or secondary meaning; and (3) likelihood of

consumer confusion.  <u>Millennium Labs., Inc. v. Ameritox</u>, 817 F.3d 1123, 1126 n.1 (9th

Cir. 2016) (quoting <u>Clicks Billiards, Inc. v. Sixshooters, Inc.</u>, 251 F.3d 1252, 1258 (9th

Cir. 2001)); <u>see also</u> <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 769–71 (1992).

　　　　To prevail on this claim at summary judgment, Defendants as the moving parties

bear the initial burden of demonstrating the absence of a genuine issue of material fact.

<u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 323.  Defendants assert that Plaintiff does not have any

registered trademarks and that Plaintiff has not established any instances of Defendants'

use of Plaintiff's alleged trademarks that was likely to cause confusion.  Defs.' Br. at 14.

Defendants reference, however, Plaintiff's assertions of confusion when several

customers inquired at a trade show whether Plaintiff sold Defendants' products and when

a customer called Plaintiff to inquire whether Plaintiff sold one of Defendants' products

but assert that these examples do not amount to confusion.  <u>Id.</u> at 14–15.  Plaintiff

contends that actual confusion is only one factor under the Ninth Circuit's standard for

determining the factor of likelihood of confusion.  Pl.'s Resp. at 17; <u>see</u> <u>AMF Inc. v.</u>

<u>Sleekcraft Boats</u>, 599 F.2d 341, 348–49 (9th Cir. 1979).  Considering the standard for

likelihood of confusion and an alleged act of confusion by Plaintiff's customers,

Defendants did not meet their burden to demonstrate the absence of a genuine issue of

material fact as to Plaintiff's federal trademark infringement and unfair competition

claim, which includes the element of likelihood of confusion.  Therefore, the issue of

confusion as an element of federal trademark infringement and unfair competition is an

issue of disputed fact that must be determined by a factfinder and not at the summary

judgment stage.

### C.  Common Law

Count III alleges that Defendants' conduct violates Arizona common law because

Defendants are likely to cause or have caused confusion, mistake, or deception as to the

affiliation, connection, or association of Defendants with Plaintiff.  Am. Compl. ¶ 134.

The alleged conduct includes (1) reference and display of Plaintiff's marks and trade

dress to promote Defendants' products; and (2) copying and publishing material from

Plaintiff's website to trade on Plaintiff's goodwill and confuse consumers.  Id. ¶¶ 131–32.

Count III also alleges that Defendants' conduct has deprived Plaintiff of the ability to

control perception of Plaintiff's products.  Am. Compl. ¶ 133.

Idaho common law recognizes the tort of unfair competition.  See Woodland

Furniture, LLC v. Larsen, 124 P.3d 1016, 1023 (Idaho 2005).  Though state unfair

competition laws are viable, they have been largely curtailed by federal intellectual

property laws.  Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 154 (1989).

The common law tort of unfair competition is "limited to protection against copying of

nonfunctional aspects of consumer products which have acquired secondary meaning

such that they operate as a designation of source."  Id. at 158.  Under Idaho common law,

this includes the "unnecessary imitation or adoption of a confusing name, label, or dress of goods." Am. Home Benefit Ass'n v. United Am. Benefit Ass'n, 125 P.2d 1010, 1014 (Idaho 1942) (quoting Starr v. Hotelling, 122 P.2d 432, 434 (Ore. 1942)). Unfair competition is a question of fact. See Cazier v. Econ. Cash Stores, 228 P.2d 436, 443 (Idaho 1951). "Where there is no reason for using a particular [dress] other than to trade upon another's good will, such use of the [dress] constitutes unfair competition and will be enjoined." Sky Capital Grp., LLC v. Rojas, 2009 U.S. Dist. LEXIS 40970, at *21 (D. Idaho May 14, 2009) (quoting Am. Home Benefit Ass'n, 125 P.2d at 1014). It is not necessary for the plaintiff to show, however, that a person "has been actually deceived by defendant['s] conduct." Cazier, 228 P.2d at 442. The plaintiff must simply show "that such deception will be the natural and probable result of the defendant's acts." Id.

As with the analysis under federal law, Defendants did not satisfy their burden to demonstrate the absence of a genuine issue of material fact as to Plaintiff's federal trademark infringement and unfair competition claim, which includes the element of likelihood of confusion.

Accordingly, the Court finds that genuine issues of material fact remain and denies Defendants' Motion as to Counts II and III.

### III.   Commercial Disparagement (Count IV)

Count IV alleges that Defendants made misrepresentations of Plaintiff and its products that caused or is likely to continue to cause damage to Plaintiff and have encouraged others to publish negative and unfounded statements about Plaintiff and its

products.  Am. Compl. ¶¶ 137–46.  These allegedly published false statements include

"statements that the present patent infringement allegations are being advanced in 'bad

faith,' the patent infringement allegations are being advanced in 'bad faith,' and that Mr.

Urick of CR Mining was engaging in a 'business tactic to intimidate the little guy.'"  Id. ¶

138.

     Defendants move for summary judgment on Count IV and argue that they did not

commercially disparage Plaintiff or Plaintiff's goods.  Defs.' Br. at 10–11.[13]

     The Lanham Act prohibits "false or misleading description of fact, or false or

misleading representation of fact, which . . . in commercial advertising or promotion,

misrepresents the nature, characteristics, qualities or geographic origin of his or her or

another person's goods, services or commercial activities."  15 U.S.C. § 1125(a)(1)(B).

"To support a claim of commercial disparagement, a plaintiff has the burden of

establishing that the defendant has made untrue or misleading statements which disparage

the quality of the plaintiff's product or services."  Cal. Scents v. Surco Prods., 406 F.3d

1102, 1109 (9th Cir. 2005) (citation omitted).  A plaintiff "always bears the burden of

proving that the alleged disparaging statement is substantially false or misleading."  Id.

(citation omitted).

     It is undisputed that Defendants posted the cease-and-desist letter on Facebook,

stating it was made in "bad faith" and was meant "to intimidate the little guy."  Defs.'

---

[13]  Defendants also state that Idaho does not have a cause of action for commercial
disparagement, Defs.' Br. at 10, but this claim is actionable under either Arizona or Idaho
law.  See Rowland v. Union Hills Country Club, 157 Ariz. 301, 306 (Ct. App. 1998);
Elliot v. Murdock, 161 Idaho 281, 287 (2016).

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 26**

SUMF ¶¶ 4, 6 at 1; Pl.'s SDMF ¶¶ 4, 6 at 2.

Defendants contend that the post is protected opinion and not actionable under commercial disparagement, analogizing the facts to Greenbelt Co-op Pub. Ass'n v. Bresler, 398 U.S. 6 (1970).  Defs.' Br. at 10–11.  Plaintiff replies that Defendants improperly defend the alleged defamatory statement as an "opinion" and that Defendants cannot make an affirmative defense under the First Amendment because Defendants failed to plead such a defense in their Answer.  Pl.'s Resp. at 12–13.

Under Rule 12(b), "every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required."  Fed. R. Civ. P. 12(b).  Defendants have failed to raise this affirmative defense in their answer and cannot raise their First Amendment defense in their motion.  See Defs.' Answer Am. Compl. (Dkt. 27).

While the Parties do not dispute that Defendants' alleged misrepresentation relates to a social media posting in which Defendants described the cease-and-desist letter sent by Plaintiff to Defendants as alleging patent infringement in bad faith, see Defs.' Br. at 10–1; Pl.'s Resp. at 12–14, there is an issue of disputed fact regarding whether Defendants' statement that Plaintiff's allegation of patent infringement was in bad faith was "substantially false or misleading."

Accordingly, the Court finds that genuine issues of material fact remain and denies Defendants' Motion as to Count IV.

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT – 27**

## IV.     Tortious Interference with Business Expectancy (Count V)

Count V alleges that Defendants have interfered with the prospective business advantage of Plaintiff by interfering with the right of Plaintiff to exploit and benefit commercially from Plaintiff's trade name, marks, trade dress and the goodwill of Plaintiff's products.  Am. Compl. ¶ 148.  Defendants move for summary judgment and argue that Plaintiff lacks a *prima facie* case on its claim of tortious interference with business expectancy.  Defs.' Br. at 11–13.

To establish a claim of tortious interference with business expectancy, a plaintiff must prove: "(1) the existence of a valid economic expectancy; (2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful by some measure beyond the fact of the interference itself (*i.e.*, that the defendant interfered for an improper purpose or improper means); and (5) resulting damage to the plaintiff whose expectancy has been disrupted."  Commercial Ventures, Inc. v. Rex M. & Lynn Lea Family Trust, 145 Idaho 208, 217 (2008) (citation omitted).

Defendants assert that Plaintiff failed to produce evidence of each of the five elements.  Defs.' Br.  at 12–13.  In opposition, Plaintiff contends that it produced evidence of each of the five elements.  Pl.'s Resp. at 14–15 (citing Pl.'s SDMF ¶¶ 27–33).  There are questions of disputed material fact as to whether Plaintiff had a valid economic expectancy, whether Defendants knew of Plaintiff's expectancy, whether Defendants interfered by intentionally inducing termination of Plaintiff's expectancy,

whether Defendants interfered for an improper purpose or improper means beyond the fact of the interference itself, and whether the disrupted expectancy damaged Plaintiff.

Accordingly, the Court finds that genuine issues of material fact remain and denies Defendants' Motion as to Count V.

<u>**ORDER**</u>

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

(1)    Plaintiff's Motion for Partial Summary Judgment (Dkt. 85) is DENIED.

(2)    Defendants' Motion for Summary Judgment (Dkt. 87) is DENIED.

The Court will set a date for a scheduling conference to discuss pre-trial matters.

DATED:  June 9, 2023

 /s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

---

* Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.